Pleased to court, my name is Gerald Gordon, and with me at the consul table is Matthew Zierzow, we're appearing on behalf of the Showcase Mall, the plaintiff and appellant in this matter. May I ask you, excuse me. Sorry, sorry, go ahead. Let me just tell you, getting at the heart of the matter, when the building was sold on the eve of trial, how can we prove, how can we hold that you prove specific damages from a loss of rent? Because as Mr. Fieldman testified, I mean, it was kind of convoluted in terms of the questioning, I've read it several times, but he testified very clearly. We sold the building, but we did not sell the rights of the lawsuit. It remained with Showcase Mall. He went on to talk about the practicality and the rationale for that, and that is that when someone buys a building, he did not know what the buyer's motivation or mindset was, but generally when people buy buildings or buy anything, they buy it based on value and based on income stream. The income stream going forward was a reduced rent produced by these five new tenants. Do you have any economists testify that because of the boxing championship thing moving out, that the income stream would be X dollars less than if they'd stayed in? They did not, but it was clear from the evidence that it was less. The lease from the Boxing Hall of Fame was in evidence. The fixed minimum rent was X, and the rentals from the five new tenants, and the leases were in evidence, was X less. Did your client disclose before cross that he'd sold it just before? No, he did not. But I would point out that if you look at the documents themselves, and I believe this is not an issue. It's a false issue. It's a red herring. If you look at the lease itself, the lease provides for an assignment. It provides specifically that the lease may be assigned and then is binding upon all successors and assigns, and it's binding upon the leasee. And the guarantee also said that. Did he assign it? He did not. Well, he did not. He had the right to assign it, but he did not. But the guarantee also says that it's binding. So this is a red herring. What does that have to do with his sale of it? He sold the premises based on four years later. They sold the premises based upon the rent. The issue was raised by the defense, but it really is not an issue. They incurred this loss. But what does the right to assign have to do with that? I'm just saying that the parties acknowledged that even during the term of this lease, there was a right to assign. When you buy a commercial building, you buy a stream of income. Correct. And ordinarily, it's kind of like buying a bond, except riskier, but you make more. And you buy the stream of income. That's correct. So he sold the stream of income. He stole the then stream of income, this later stream of income. And the stream of income was five tenants. Income. How does he still get to recover the stream of income? If you want to infer, if this stream of income from the Boxing Hall of Fame, if the Boxing Hall of Fame would have been in place at the time they sold Showcase Mall, sold the property four years later, if it was, it would have been higher income. Theoretically, it would have gotten a higher price. But the testimony is unrefuted, is clear and unequivocal. We sold the premises. We did not sell this lawsuit. Let me ask you about something else. It went to trial, right? Not summary judgment? Correct. Three-day trial. And bench trial. And your only witness about the loss was the owner himself? The owner himself, plus the evidence and record. And the evidence before the court were documented evidence, and that was the existing lease, the new leases, and also the evidence with regard to documentation, with regard to the cost of reletting, remodeling those items. They were all in evidence. And as the court said, it went to a bench trial for over three days. And the result of that bench trial is a four-page combination of findings and conclusions of which, when everything is said and done, you end up with 29 lines of combined findings and conclusions. That's it. It starts on page 3 at line 20, and it runs through page 4 at line 22. Did either party request findings of fact and conclusions of law? Yes, they did, and they both submitted findings and conclusions. The court drafted its own. And again, basically 29 lines in which it's very difficult to comprehend exactly what the court was doing or saying. Are you saying any of them are clearly erroneous? I missed that. Yes, there are facts that are clearly erroneous. What finding of fact did you say in your brief was clearly erroneous? If the court were to go to the page 4 of the findings and conclusions, the last page, and just starting, it says, the evidence of trial clearly establishes a showcase terminated the lease for a non-monetary default by BHOC to which failure to open on time. That is correct. That was the actual event of default which caused the termination of lease. Then it goes on to say, moreover, at the time showcase terminated the lease, BHOC was not in default of any monetary covenant. That is incorrect. The evidence is clear in the record, as cited to you in the opening brief, that the months of October and November were not paid. Hold on. Which lines do you say are clearly erroneous? Starting on line 3, the sentence says, moreover, at the time showcase terminated the lease, BHOC was not in default of any monetary covenant. Okay, and show me in the brief where it says that's clearly erroneous. I thought the brief was not specific to that. Opening brief. Yeah, I want to see in the blue brief where it says that. It's on page 13 at line 26. I'm sorry, paragraph 26 and paragraph 27. It doesn't say there. It doesn't have the magic words clearly erroneous. That must be why I missed it. Well, no, I'm sorry, Your Honor. That's the standard is clearly erroneous. Those facts are incorrect. I would submit they are clearly erroneous. See, what I was looking for was the brief says, this and that finding was clearly erroneous, and then it shows me what finding it's talking about. I'm sorry, I have to say I can't point to that in the opening brief. Let's assume you're correct that two months rent had not been paid and the rent had to be paid until the lease was formally terminated. Let's assume that that's monetary damages. Is there anything else that we can assume would be monetary damages? Yes. You're saying the whole value of the lease. The entire value of the lease is damages less what was mitigated, and that would have been the replacement. The issue really comes down to is the following. The lease was terminated at the end of November of 2001. Ultimately, it was abandoned a few days later. And remember, this decision to terminate or to allow or not to open, which caused the termination of the lease was a result of the lessee and its principal, for all intents and purposes, the managing member, Mr. Milstein, the guarantor. Because if you look down the chain of ownership, Mr. Milstein is the managing member of the entity which managed the lessee. So rent was due October, November, wasn't paid. It was around $350,000 or whatever. $195,000 a month or $390,000. I didn't add correctly. That's correct. Two months rent. I have trouble finding any other actual monetary damages. Well, the monetary damages is you go to the lease. And what it says is, in paragraph 24, is if you terminate this lease, it says in 24.2, says remedies and damages. And that is you terminate this lease by notice to the tenant. The lease has been terminated. No question about that. It was terminated for an event of default and a failure to open. Then you get down to 24.2b. And it says notwithstanding any termination of this lease or termination of tenant's rights to possession, whether by summary proceeding or otherwise, tenant shall pay and be liable for the several installment of rent as if this lease had not been terminated. And what months were those? Well, that would have been for the entire term, remaining term of the lease after the termination. I thought it was an all or nothing case. Well, it is an all or nothing case. Less mitigation. And the fact is, is that the landlord. It's not a case about two months rent. Oh, no. You don't want two months rent. You want all or nothing. No, I'm pointing out that the court erred by simply saying that there is no monetary default. I've read your statement of issues. And it looks like matters of law. It's a combination. Yes, it is. But facts in there. I'm trying to find out if it's an all or nothing case or you put before us two months rent. It is an all or nothing case. It's too much rent up to the termination. And after termination, it is a balance of the rent for the term that has been now breached and terminated. But it's very clear, according to 24b, that you then go about collecting rent and tenants shall be entitled to a credit in the net sum of rents by a landlord in re-letting after deduction of all expenses incurred in re-letting the premises and collecting such rents. There is a combination. Your appeal is not for the $390,000 for opportunity. No, it's very clear. It's very clear. What it's for is, and what we say the court erred, was as follows. One, it found that the tenant was not liable post-termination for the rent. First of all, the court erred by saying there was no monetary default prior to termination. There was two months. That the court erred after termination by finding that the landlord was entitled after termination to the balance of the rent, to which the court said, no, you're not. On the October and November 2001 rent, as I recall, the only evidence to support that that rent was not paid was that Fieldman, the owner of the mall, testified that it was. Not only did he testify, and that's more than sufficient since no one testified contrary. Wait a minute. It's a case that went to trial. It's not summary judgment. So you don't draw all inferences. I appreciate that. And the judge, it looks like he didn't have much use for Fieldman, probably because he sold the mall without telling anyone. Well, look, I don't know. All I can tell you is that the evidence before the court at the time, we're talking about a huge sum of money. The evidence before the court was not only that Mr. Fieldman testified to it, but if you just simply look at what evidence was before the court as to the amount paid, the amount paid, the $2,400,000, whatever it is, it clearly can be extrapolated from that, that there was two months not paid. No one's denying that these last two months was not paid. There was no denial of this. Two months was not paid. They paid until September. They did not pay October, November. But the issue really comes down to is what the court does in its findings, in its findings slash conclusions, which I find very ambiguous. As I read his findings, he really felt your client was seeking a windfall here. Well, he kept from the court that he sold it. It's very clear, I think, to me, at least in the record, that two months' rent was not paid. But you don't want that two months' rent. You want all or nothing. Is that correct? Yes. But any time you have a lease and someone leases a premises to someone else and the tenant then breaches that lease, purposely breaches it and moves out, are we now going to say the law is, well, you're going to get a windfall if you get the balance of your lease? No, you don't get a windfall. Who has the duty to mitigate here? The duty to mitigate. Obviously, the landlord has the duty to mitigate and the lease says it. The burden to prove the burden of proof is on the defendant. But the landlord showed, I think, clear evidence of mitigation. It went out, attempted a relet. First of all, it could not start to mitigate after the premises was abandoned. And the court kind of confuses that. Say that again. The obligation to mitigate with the abandonment. In December of 2001, when it was abandoned, that's when the duty to mitigate begins. All the authorities are clear. We've cited to that. All the treatises. I'm sorry. When was the property sold? 2005, I believe. When was the case? Pardon me? It was sold just at trial. I'm sorry. I may be wrong by a year. Didn't Judge Prove find that the untimely or failure to disclose that sale obscured the ability of the defendant to establish a failure to mitigate? No. Because by that time, mitigation had taken place. By that time, within a year after the abandonment, the landlord had started to relet. I think you may misunderstand the question. I'm not asking you whether he was correct in that determination. Didn't he, in fact, determine that? No. I don't believe so. I think he basically ignored it. He says, he talks about, obscures plaintiff's efforts to demonstrate damages. I believe that is an error. Because what happened by that time, by the time it was sold. So he did say that. Exeter Record 1217. District Court held that showcases sale of the mall obscured appellant's efforts to prove damages. He did say that. He did say that. All right. But what I'm pointing out is, by that time, the new tenets had already been in place. I believe the mitigation had been clear. The landlord went forward, could not rent it as one big box, and then proceeded to subdivide into five tenants and re-rent it. I don't think there's any showing of here, of anything but clear mitigation on the part of the plaintiff. So I believe the court's finding that there was insufficient evidence to reflect damages is incorrect. Incidentally, I took a look at your Exhibit 182A on this October-November rent, and it looks as though that does not set out the October-November rent. I believe you get to the October-November rent from looking at the record in terms of the testimony, and you also look at the numbers. I'm looking at SER 164 in Exhibit 182A, and I don't see it. That's a demonstrative. Just show me how to see it. I can tell you because Mr. Fieldman testified to it. That the October-November rent was not paid. That 162... Just show me. Teach me how to read it. 162? SER 164, I think, is the critical page. It's also on SER 165, but I didn't see anything there that could possibly be it. So I could have been missing it. If you go to the second page... SER 165. Right. Okay. It looks to me like that starts November 15th. It starts November 15th. So 1130-01, and you see that there is a balance at the end. Rent received, the balance due was $2,874,864.25. Rent received $2,465,468.54, leaving a balance due at that time of $409,395.71. So what you're saying is I should infer from the fact that he says that as of November 30, there was $409,000 due that the October-November rent wasn't paid. No, I'm not saying you should infer. I'm saying the evidence is clear. Mr. Fieldman testified as a representative that there was two months of rent not paid, and no evidence was presented saying contrary. The judge just didn't feel like taking his word for anything because he was a sneak. He sold the building the day before and didn't tell anyone. Your Honor, if that's where you want to characterize it, but I don't. I'm saying that based on the evidence, the court did not say that. What the court said was there was insufficient evidence with regard to damages. That's incorrect. That the plaintiff did not mitigate, that's incorrect. That the court's standard of law was incorrect.  I'd like to ask a question about damages. How could you argue below that Fame and Multifacet were parties to the lease, but now claim they were not parties for the sake of recovering attorney's fees? Your Honor, we did not try the case. We came in prior to the reply brief. That would be trial counsel, and those causes of action went away. They were not up on appeal. All right. Thank you. Thank you, counsel. Good morning. May it please the court. Todd Bison, staff of the appellees. This, I would submit to the court, is not a hard case. Hard facts for the making of bad law. I think it is a very simple case controlled by a very simple and straightforward standard of review. Well, good. If it's simple, then tell me why you shouldn't be a liable for two months' rent. Because the rent was due up until the end of December. Let me answer that question to you, Your Honor, in two ways. One, I would dispute from the record that the evidence is clear that the rent was not paid. Think about what the testimony was. The only witness that was offered by them on this was Mr. Fieldman. And Mr. Fieldman's only basis for testifying was, is that someone whispered in his ear what the numbers were, or someone slid a document in front of him to say what the numbers were. This was an individual who had no personal knowledge of anything. And if quite, to be perfectly candid with you, my only criticism of the district court is this case should not have gotten to a trial. This was a case where we were entitled to a directed verdict. This gentleman took the stand, testified falsely in the present tense that he owned the facility, and then got up there and tried to spit out numbers and offer up documents that had no foundation. He knew nothing. And here's the testimony on cross-examination about these two months' worth of rent. You know, this is a very important issue because it deals with attorney's fees as well. It does. And it prevails. And I'll just read it to you. Give us the page number. This is in the Excellency Record 582. This is his cross-examination at trial on this very issue. Question. Your counsel asked you questions about these April defaults, and I think this was July-August issue. Answer, yes. Question. And an ambiguity about September. I just want to make it perfectly clear, as far as you know, at the time that Showcase terminated the lease and gave the notice of termination, which was, by the record, November 29th, Your Honor. Okay? Yes. Question. There was no money owed. Is that right? Answer. That's correct. This is their witness testifying that as the time that they gave the notice of termination, that notice of termination was dated November 29. There were no monies owed. Wow. Can you read that again? Yes. So you've got the only witness is this, what's his name, Fielding? Yes, Barry Fielding. This is their witness. And he's Showcase's owner. Correct. Read again what his words were. I just want to make it, this is the question. I just want to make it perfectly clear, as far as you know, at the time that Showcase terminated the lease and gave the notice of termination, his answer was yes. Question. There was no money owed. Is that right? Question mark. Answer. That's correct. Did he ever say, that's not what I meant? Oh, well, they have, they have tried to, they have tried to recast that, that he was talking about something else. And that's their argument in their reply brief that he's talking about something else. But again, the district judge got to evaluate his credibility and what he knew or did not know. And let's just be fair. Let's call it what it is. He knew nothing. He was an individual. If he knew, if he knew nothing, then he didn't know anything about what was paid or not paid. Well, if he knew nothing, your honor, your, if he knew nothing, then there's, the plaintiff could not carry its burden of proof of showing what was owed and what wasn't owed. In this chart we were talking about, Fieldman didn't prepare it? No. And he. His, his financial individual, I believe his name was Benvenides, is the one who prepared it. Benvenides did not testify? Exactly. And he works for them. And that's why the Nevada Supreme Court says if you possess the evidence and you don't offer it up at trial, we're going to, there's, under Nevada law, you're entitled to an inference that that testimony would have been adverse. I once tried a landlord tenant case. And what we did was put in all the rent checks as evidence. Yeah. That wasn't done here either. Happened here? No. The only thing that was offered was this summary, which by the way, as the district judge says, there was no foundation for it. So it wasn't admitted into evidence. Because again, the witness. The chart did not, was excluded? No. It is not an evidence. It was, it was admitted only for the purposes of demonstrative purposes. The district judge made that crystal clear because this witness had no knowledge. Because the man who prepared it and could explain it did not testify or was it? Yes. Unadmitted because it wasn't necessary as evidence and was just like when you write numbers on the blackboard. I don't recall if the district judge from the record made a specific finding that I'm not In other words, it is not a business record. Nevertheless, it is not evidence in this case. And there was no evidence in this case offered any competent evidence that rents from the months of October and November were not paid. And I would, and I would also make this point to you. Even if they were not paid, they cannot be recovered in this case because the lease is crystal clear and under the personal guarantee, it was also crystal clear. And they admitted this point also that there was no notice and no demand was ever made. And the lease is clear that in order to declare, declare a monetary default, one has to send the notice and one has to give them an opportunity to cure the monetary default. That was not done here. And again, this is back on page two, excerpt of record 582 earlier and lines the answer that starts on line five. He is talking. This is Mr. Fieldman again, talking about this very point, making it clear that he assumed based on the letter from Zucker, his lawyer, that the rent had been paid because there was no demand for rent. That was his testimony yet again, because they conceded. Bill Stein says, um, no Fieldman Fieldman, their witness once again, said he conceded no demand for rent had been paid. And that was the basis for his assumption that they had been paid. He said no demand was made because he inferred. No, he inferred from the fact that no demand was made that the rent had been paid. And that was his testimony at trial. And again, this isn't a summary judgment ruling. This is a bench trial where the judge heard the witnesses testify. He evaluated their credibility. He evaluated their knowledge. When has somebody else sent out demands? Yes, his lawyers. So he infers from the fact that his lawyers did not send out a demand. He got paid his rent. Yes, exactly. So even if it had not been paid, by the way, the testimony from him is that there was nothing. No, let's assume for the sake of argument that he's not to be believed on that issue, like all others, that it, and that it hadn't been paid. You still can't recover it in this case because you had failed to comply with the notice and demand requirements as set forth in the lease and under the personal guarantee. Because recall that those lease payments were being made under the terms of the personal guarantee because this tenant never opened. And this, let me respond also to this argument about the issue of mitigation and what they did and did not do. The testimony, or the argument you just heard was as well, they couldn't have mitigated until the tenant left. That, of course, ignores, and this is in our supplemental excerpts of record, I believe at 115. This is the letter from Mr. Milstein, dated in May 18 of 2001, telling them, this is when he told them, we are not going to get open. I apologize. And in that letter, he sets out expressly, in light of our inability of the tenant, or in light of the inability of the tenant to perform its obligation to the lease, you should commence all appropriate steps to re-let the premises and mitigate the damages. That is in- Able to, they had access to the building? Yes. Whatever they need? Because we had done, the place had never opened. So you never moved in? Exactly. We never obtained financing. So did Showcase Mall, Fieldman have the keys? As far as I know, yes. I don't believe that's actually in the transcript. It was the landlord, and Milstein had told him, please re-let it. So his obligation to start mitigation commenced when he got this letter, and that was in May of 01, not December of 01, like you're now trying, they're trying to, because, and why do they want to emphasize that point to you? Because they did nothing in May. They did nothing in June. They did nothing in July. So Milstein was never in? Never. And that was, that's the point here, your honors. They did nothing. And this is, and the district court is- That Milstein did to stop them from re-letting? No, there's nothing in the record that he did. In fact, again, his letter encouraged them. The tenant hasn't moved in. He's trying to get his financing, but he doesn't let the landlord show it around because he still wants to keep it on, keep the possibility. Again, your honor, if that, if that's what happened in this case, there's nothing in the record. And again, all I can tell you is the record says the contrary, because his letter of May 18 of 01 specifically tells the landlord, you need to re-let because we cannot open. Expressly asking them. And what did they do thereafter? Nothing. They did absolutely nothing. Did they advertise the space? No. What did they do instead? They undertook these multi-million dollar capital improvements to increase the value of the property so that they could sell it and then turn around and at the time of trial and claim what those were charges that we incurred as part of the re-letting process. That is just not accurate. Those were capital improvements. They spent a lot of money making the capital improvements to benefit the property. And in hindsight, obviously those improvements paid off because they sold the property for a very handsome profit. Now let's also talk about that issue a little bit and why the district judge made that concluding comment in his order about how it cast doubt upon any damages at all. Think about what they were trying to do here. We, the tenant is unable to open. They're given notice in May of 01 to start to mitigate and re-let. They don't do any, they don't do that and instead they undertake these capital improvements and then they subsequently re-let the space. The point here is they then file this suit and claim what? They claim rent, they claim that they're entitled to accelerate the rent for the entire term of the lease hold. They're claiming rent 15 out, 15 years out from the year 2001 to the year 2016. Those were their damages calculations at the time of trial, not offered up by anyone who had any personal knowledge other than just doing the math, saying well here's the rent times 16, boom, look at this enormous number that we have as our damages. 24 million or something? Yes, exactly. Under Nevada law, would you discount a stream of income to the present day value? Of course you would. But more fundamentally, not only that, under Nevada law you're not permitted to accelerate unless it's a bargain for term. And in here the lease actually says the exact opposite because it says if they terminate the lease would be due on the dates as though the lease were still in effect. So you're not permitted to accelerate to begin with. That's why our hope, that's why this notion that it was just inadvertent he didn't tell the court that he had sold the property three days before the trial started, is with all due respect, it is rubbish. Because he knew he had sold that income stream under Nevada law. That income stream is the rent going forward. You don't get to accelerate that. And he sold that property. That's why he didn't tell it. That's why he testified throughout the trial. And you can read it in the transcript. He testified in the present tense, referencing it as his property when it wasn't his property because he was trying to conceal that fact because he had sold the income stream that he was claiming was $24 million and it was an enormous windfall he wanted to put into his pocket. And so the district court was quite right, I think quite charitable, in phrasing it the way he did in his order, to be perfectly candid. I think the district court would have been entitled to use far more damaging language about this witness than he did. And the record would fully support his, if he had done so. That brings us, I think, around to, as I've commented on the issue of mitigation. And what is the clause of the lease that says no acceleration? There is no clause that says no acceleration. I believe it is clause 24 of the lease, which specifies what happens if they terminate. And it reads, paraphrasing it, notwithstanding any termination, tenant shall pay and be liable, parentheses, on the days originally fixed herein for the payment thereof, end parentheses, the several installments of the rent as if the lease had not been terminated. So not only was there not an agreement to accelerate, that language would preclude any type of acceleration because it is due on the days originally fixed herein as if the lease had not been terminated. And that's, again, why that gives, that tells you what his motive was in concealing the sale from the court. Because he was trying. Basically, he was suing for something that he'd sold to somebody else. Exactly. Not disclosing it. Exactly. And I would also submit to you, and I concede I am inferring from this, is that's why his financial individual, Mr. Benavides, did not take the stand. Because he knew it had been sold as well. So he instead got up on the stand, testified in the present tense about his ownership in the property. Because, again, the gentleman had, Mr. Fieldman had no personal knowledge. Again, and I say this out of a healthy respect for this district judge, tried many cases in front of him. The only criticism I have of him, again, is he bent over backwards for these people. He allowed them to, on the eve of the trial, submit thousands of pages of undisclosed documents long after discovery had closed, long after the pretrial order was in. I believe they served those on us on the Friday before the trial started the following Monday. And he allowed them to do that. He then allowed this gentleman to testify absent any personal first-hand knowledge of any of the numbers. Again, you saw from his testimony in the record, when he was confronted about what the credits were that were given for the new tenants and on these forms, he didn't know what those numbers were. He said, well, probably, I assume they are. Well, Mr. Benavides prepared this document. I'm not exactly sure what's all included in those numbers. Why? Because, again, his testimony was based on someone telling him before the trial started or showing him documents before the trial started about what they were claiming, because he personally knew nothing. So as far as what you're saying, if I understand it right, is as far as Milstein not proving that the rent was paid for those two months, we should cut him some slack because of the late production that evaded discovery. Well, that's also true. But it is not the appellee's, including Milstein's, responsibility to prove that they had paid the rent, what rent had been paid, et cetera. It's their burden to prove, obviously, in the court notice, what was exactly. It's just preponderance of evidence. It's kind of a weak burden. It goes back and forth. Again, in a case like this, what I would think why I started my argument was saying, I think this is a very simple and easy case, is that's why you have a district court judge who hears the evidence, who evaluates the witnesses, who looks at the documents, and hears the witnesses explain the documents. And based upon that, can you look at this order that he submitted and say, this finding is clearly erroneous. This one is clearly erroneous. And I would submit you go through that, and the answer to that is you absolutely cannot say any of those findings are clearly erroneous on this record when he's allowed to evaluate these witnesses. And he heard this testimony come right out of the plaintiff's mouth. No money was owed, as far as he knew, on the date that they gave that termination notice. Coupled that with the fact that this witness, again, confirmed they'd never given any notice, even if it hadn't been paid. They couldn't, it wasn't a triggering event, so they couldn't recover it at the trial anyhow. With that, I know I have a few minutes left, but I thank you. The court understands the record well. Unless you have questions for me. No questions. I thank the court for its time. With the time left, just let me comment a couple of things. One, with regard to the two months' rent, as the Court asked, the number of it is $2,465,468.54. The other evidence to show that there is clearly an understanding on the part of the defendant that there was rent due for the months of October-November is simply to refer to the reply, excerpt record, number, page 29, which is the findings of fact, concludes as a law submitted by the defendant, in which the defendant states, number 39, Mr. Milstein's and BHOC's payments of $2,465,488.54 reduce his aggregate liability under the initial guarantee limit to a maximum $2,214,511.46. So your proof that the two months' rent wasn't paid is not any of the evidence? It's an inference that the defendant must have consulted? No. It is Mr. The defendant's proposed findings of fact? No. It is Mr. Fieldman testifying to it, and that's supported by the fact that the defendant put no evidence in, and they submitted findings and conclusions, which submits and validates that. You've got a page number that contradicts the page number that your adversary gave us on Fielding saying that the two months' rent was not paid? Yes. In our brief, we go extensively through that issue, and what Mr. Fieldman was testifying to was we start at page 5. There's a series of instances. What he's talking about is Mr. Fieldman is referencing as to September, when the notice of the fall was issued. That's what he's referring to. As of September, the rent was paid. As of October, November, the rent was not paid. We go through it on page 5 and page 6 of our brief. What are the excerpt's page numbers? Let's see. Excerpts 212, 13, 203, 204, 581, 10. I'm sorry. It's down in the footnote. 212 through 213. Let me go back. I'm sorry. Let me synthesize and summarize it. 398, lines 14 through 16. 451, lines 23 through 24. 672, lines 23 to 24. It's in our footnote 6 in our reply brief. Thank you. The final point I would make is- Your time is up. Sorry. You're right. I'm looking at it going the other way. Thank you. Thank you, counsel. Sorry. Showcase small versus- Next is core versus new Casey. This is a 20-minute case. Make 10 and 10. This is 10. This is core versus new Casey. K-A-U-R. It's 10 and 10. Counsel? I may please the court. Ina Lipkin on behalf of the petitioner. This is a matter in which the Board of Appeals agreed with the immigration judge's finding that the petitioner failed to establish that she timely filed her applications for asylum and also denied her-
judges: Nelson, Kleinfeld, Hawkins